UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

CARMEN DIAZ,

                    Plaintiff,

      -against-

SARAH PINTO VIAGRAN, PRINCIPAL OF P.S.
20: NYC DEPARTMENT OF EDUCATION

                    Defendants.
_____

Matter No.
16-cv-9106

_____

# PLAINTIFF'S MEMORANDUM OF LAW
# IN SUPPORT OF OPPOSITION TO DEFENDANTS'
# MOTION FOR SUMMARY JUDGMENT
_____

ALBERT VAN-LARE
THE LAW OFFICES OF ALBERT VAN-LARE
125 Maiden Lane, Suite 510
New York, New York 10038
(212) 608-1400
Vanlareesq@aol.com
Attorney for Plaintiff

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................1

**STATEMENT OF FACTS** ....................................................................................3

**STANDARD OF REVIEW** ....................................................................................3

**ARGUMENT** .......................................................................................................5

    POINT I DEPARTMENT OF EDUCATION ENGAGED IN
    DISCRIMINATION AGAINST PLAINTIFF BECAUSE OF DISABILITY
    AND UNLAWFULLY DENIED PLAINTIFF REASONABLE
    ACCOMMODATION. .......................................................................................6

    POINT II RACE DISCRIMINATION IS WELL PLEADED IN THE
    AMENDED COMPLAINT AND MUST SURVIVE DEFENDANTS'
    SUMMARY JUDGMENT. ...............................................................................14

    POINT III PLAINTIFF WAS DENIED HER DUE PROCESS RIGHTS
    UNDER THE UNITED STATES CONSTITUTION AND UNDER THE NEW
    YORK STATE CONSTITUTION ...................................................................18

**CONCLUSION** ...................................................................................................19

**CERTIFICATE OF SERVICE AND ECF CERTIFICATION** ..........................................21

# TABLE OF AUTHORITIES

## CASES

Albunio v City of New York,
16 NY3d 472, 477-478 [2011]......................................................................4

*Bowen v. Cnty. of Westchester*,
706 F.Supp.2d 475, 484 (S.D.N.Y.2010) ....................................................14

*Brodeur v. City of New York*,
No. 99 Civ. 651(WHP), 2002 WL 424688, at 6 (S.D.N.Y. Mar. 18, 2002)...................15

*Burgis v. Dep't of Sanitation City of New York*,
2014 U.S. Dist. LEXIS 44759 (S.D.N.Y. 2014)....................................14, 15

*Ciambriello v. County of Nassau*,
292 F.3d 307, 313 (2d Cir.2002)..................................................................19

Delaney v. Bank of Am. Corp.,
766 F.3d 163, 167 (2d Cir. 2014)..................................................................3

Feingold v. New York,
366 F.3d 138, 152 (2d Cir. 2004)..................................................................4

Forgione v. City of New York,
2012 WL 4049832, *9, 2012 U.S. Dist LEXIS 130960, *26-27 (ED NY 2012)............9

Gorzynski v. JetBlue Airways Corp.,
596 F.3d 93, 101 (2d Cir. 2010)....................................................................3

Green v. Bauvi,
46 F.3d 189, 194 (2d Cir. 1995)..................................................................19

*Guerrero v. City of New York*,
No. 12 Civ. 2916(RWS), 2013 WL 673872, at 2 (S.D.N.Y. Feb. 25, 2013).................15

Harris & Assocs. v DeLeon,
84 N.Y.2d 698..............................................................................................9

In *Board of Regents v. Roth*,
408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)...................................19

Jacobsen v New York City Health & Hosps. Corp.,
97 AD3d 428, 431 (1st Dept 2012)..........................................................9, 10

Jochelman v. New York State Banking Dept.,
83 AD3d 540 (lst Dept 2011).....................................................................10

*Keitt v. New York City*,
882 F.Supp.2d 412, 423 (S.D.N.Y.2011) ...................................................15

Liebowitz v. Cornell Univ.,
584 F.3d 487, 498 (2d Cir. 2009)..................................................................4

Loeffler v Staten Is. Univ. Hosp.,
582 F3d 268, 278 [2009]...............................................................................5

Matter of McEniry v. Landi,
    84 N.Y.2d 554, 558 (1994) ........................................................................................6

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) ..................................................................................................3

Miloscia v. B.R. Guest Holdings, LLC,
    33 Misc.3d 466, 473 (Sup Ct, N.Y. County 2011) .............................................9, 10, 14

Monell v. Dep't of Soc. Servs. of City of New York,
    436 U.S. 658, 691–694 (1978) ................................................................................14

Nelson v HSBC Bank USA,
    87 AD3d 995 [2011] ................................................................................................4

Norton v. Sam's Club,
    145 F.3d 114, 118 (2d Cir. 1998) ............................................................................4

Pembaur v. City of Cincinnati,
    475 U.S. 469, 478–81, 106 S.Ct. 1292, 1297–99, 89 L.Ed.2d 452 (1986) ....................16

Phillips v City of New York,
    66 AD3d 170, 178 (1st Dept 2009) .................................................................6, 9, 10

Pimentel v. Citibank, N.A.,
    29 AD3d 141, 145 (lst Dept 2006) .................................................................6, 9, 10

Pucino v. Verizon Wireless Commc'ns, Inc.,
    618 F.3d 112, 117 n.2 (2d Cir. 2010) ......................................................................3

Ricciuti v. New York City Transit Auth.,
    941 F.2d 119, 122 (2d Cir.1991) ........................................................................15, 16

Ruhling v Tribune Co.,
    2007 WL 28283, *15 n 4, 2007 U.S. Dist LEXIS 116, *46 n 4 (ED N.Y. 2007) ............13

Shumway v. United Parcel Serv., Inc.,
    118 F.3d 60 (2d Cir.1997) ......................................................................................16

United States v. Brennan,
    650 F.3d 65, 93 (2d. Cir. 2011) ..............................................................................4

Vassallo,
    591 F.Supp.2d at 184 ............................................................................................16

Vig v New York Hairspray Co., L.P.,
    67 AD3d 140, 146 (1st Dept 2009) ........................................................................6

Vinokur v Sovereign Bank,
    701 F Supp 2d 276, 292 (ED N.Y. 2010) ..............................................................10

Walker,
    2010 WL 5186779, at *7 ......................................................................................16

Williams v New York City Hous. Auth.,
    61 AD3d 62, 66 [2009], lv denied 13 NY3d 702 [2009] ..............................................4

Williams v New York City Housing. Auth.,
     61 AD3d 62, 66 [lst Dept 2009]......................................................................6

*Za hra v. Town of Southold*,
     48 F.2d 674, 685 (2d Cir.1995)...................................................................15


## STATUTES

42 U.S.C § 1983.............................................................................................. 14, 19

42 U.S.C. § 1981............................................................................................. 14, 18

42 U.S.C. § 2000e-2(a)(1)...................................................................................... 3

Fed. R. Civ. P. 56(a) ............................................................................................... 3


## OTHER AUTHORITIES

Administrative Code § 8-102 (16) (a)...................................................................... 6

Administrative Code § 8-102 (18) .......................................................................... 9

Administrative Code § 8-107 (1) (a)........................................................................ 6

Administrative Code § 8-107 (15) (b) ..................................................................... 9

Administrative Code 5 8-107 (15) (a)................................................................. 9, 10

Executive Law § 292 (21-e)..................................................................................... 9

Executive Law § 296 (3) (a) .................................................................................... 9

New York Education Law Section 2568 .................................................................. 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
CARMEN DIAZ,

               Plaintiff,

                               Matter No.: 16-cv-9106

      -against-

SARAH PINTO VIAGRAN, PRINCIPAL OF P.S.
20: NYC DEPARTMENT OF EDUCATION
                    Defendants.

------------------------------------------------------------------- x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

      This case arises from a complaint filed by plaintiff (Diaz) alleging discrimination because of race, disability and denial of reasonable accommodation. (See page 1 of Defendants Memorandum).  Plaintiff was granted reasonable accommodation by three previous principals at P.S. 20.  The accommodation was in place for the eight years preceding the appointment of Pinto as the principal of P.S 20.  Under the terms of the accommodation all the fifth-grade teachers wrote a single letter to parents of fifth graders informing them that one of the fifth-grade teachers suffers from severe allergies to certain scents which triggers her asthma.  In the letter the teachers wrote that to ensure the well being of the teacher, the entire 5th grade was honoring a fragrance free classroom environment.  See Defendants' Exhibit D.  There was no complaint from any student, parent or teachers in the eight years the accommodation was in place. Children were rarely removed from classes under this accommodation.  The accommodation allowed Diaz to place a student in another classroom of the same grade if the student wore fragrance that

1

triggered her asthma.  Students, parents, and teachers expressed an understanding for the policy and since the inception of this accommodation, prior to the appointment of Pinto, no more than two students were placed in a different class, per year, pursuant to this policy.  In some years there was only one student reassigned to a different classroom.  They were also years where no student was reassigned to another class.  Pinto immediately, on arrival to the school, discontinued this accommodation without any interactive process.  Pinto also told Diaz to stop teaching and apply for medical disability.  Pinto subsequently claimed that the accommodation violated DOE discipline policy.  The accommodation did not violate any DOE policy.  Pinto misapplied the policy because the disciplinary policy she refers to is only applicable to removal of children from classes where there is a misconduct or safety violation by a student.  That policy applies to disciplinary procedures, it does not apply to other situations that may involve removal of students, for example where the health of a teacher may be in danger.  Even where the policy was not misapplied, such departmental policy cannot override the statutory provisions of city, state, or federal anti-discrimination laws.  Additionally, Pinto engaged in race discrimination against Diaz by subjecting her to different terms and conditions of employment compared to similarly situated non-Hispanic teachers.  Pinto directed Diaz to attend a medical evaluation when she did not direct other non-Hispanic teachers to do so.  In her first meeting with Diaz, Pinto also told Diaz she should go on disability. Pinto never directed other non-Hispanic teacher who requested medical accommodations to stop working and apply for disability.  Pinto made these remarks without discussing the specifics of Diaz's accommodation request with her. Pinto never inquired into how Diaz's accommodation request that was abrogated by Pinto was operated.  Pinto did not ask Diaz what issues or problems, if any, were associated with the accommodation granted to Diaz by three previous principals.

2

## STATEMENT OF FACTS

Plaintiff respectfully refers the court to her Rule 56.1 statement and Amended Complaint filed in this case.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014). The court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Aulicino, 580 F.3d at 79⬚80.  Courts have long recognized "the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute 14-181Walsh v. NYCHA as to the employer's intent." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks omitted).  Title VII makes it unlawful for an employer to discriminate against any individual based on a protected class. 42 U.S.C. § 2000e-2(a)(1). Claims of discrimination under Title VII and the NYHRL are analyzed using the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 117 n.2 (2d Cir. 2010) ("Courts review discrimination claims brought under the NYSHRL according to the same standards applied to Title VII discrimination claims."). First, plaintiff must establish a prima facie case of discrimination by demonstrating that "(1) she was within the protected class; (2) she

was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Liebowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). "The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998) (internal quotation marks omitted). If the plaintiff successfully establishes a prima facie case, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." United States v. Brennan, 650 F.3d 65, 93 (2d. Cir. 2011) (internal quotation marks omitted). If the employer carries that burden, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).

It is beyond dispute that the City HRL now "explicitly requires an independent liberal construction analysis in all circumstances," an analysis that "must be targeted to understanding and fulfilling what the statute characterizes as the City HRL's 'uniquely broad and remedial' purposes, which go beyond those of counterpart state or federal civil rights laws" (Williams v New York City Hous. Auth., 61 AD3d 62, 66 [2009], lv denied 13 NY3d 702 [2009] [emphasis added]).  New York Court of Appeals has emphasized that the Restoration Act's amendment of section 8-130 of the City HRL was enacted to ensure the liberal construction of the City HRL by requiring that all provisions of the City HRL be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (Albunio v City of New York, 16 NY3d 472, 477-478 [2011]; see also Nelson v HSBC Bank USA, 87 AD3d 995 [2011] [adopting this Court's holding in Williams that considerations of severity or

4

pervasiveness applicable in state and federal harassment cases are impermissible in determining liability in discriminatory harassment cases under the City HRL]; Loeffler v Staten Is. Univ. Hosp., 582 F3d 268, 278 [2009] [explaining that "claims under the City HRL must be reviewed independently from and 'more liberally' than their federal and state counterparts"]). For purposes of consideration of summary judgment motions in discrimination cases brought under the City HRL:(1) If a court were to find it necessary to consider the question of whether a prima facie case has been made out, it would need to ask the question, "Do the initial facts described by the plaintiff, if not otherwise explained, give rise to the McDonnell Douglas inference of discrimination?"(2) Where a defendant has put forward evidence of one or more nondiscriminatory motivations for its actions, however, a court should ordinarily avoid the unnecessary and sometimes confusing effort of going back to the question of whether a prima facie case has been made out. Instead, it should turn to the question of whether the defendant has sufficiently met its burden, as the moving party, of showing that, based on the evidence before the court and drawing all reasonable inferences in plaintiff's favor, no jury could find defendant liable under any of the evidentiary routes—McDonnell Douglas, mixed motive, "direct" evidence, or some combination thereof.  (3) If the plaintiff responds with some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete, a host of determinations properly made only by a jury come into play, and thus such evidence of pretext should in almost every case indicate to the court that a motion for summary judgment must be denied.

# ARGUMENT

**POINT I**

**DEPARTMENT OF EDUCATION ENGAGED IN DISCRIMINATION AGAINST PLAINTIFF BECAUSE OF DISABILITY AND UNLAWFULLY DENIED PLAINTIFF REASONABLE ACCOMMODATION.**

Under both the NYSHRL and the NYCHRL, it: is an unlawful discriminatory practice for an employer, because of an individual's disability, to refuse to hire or to discharge such individual, or otherwise to discriminate against such individual in the terms, conditions and privileges of employment. Executive Law 5 296 (1) (a); Administrative Code § 8-107 (1) (a). To establish a case of disability discrimination, a plaintiff must show that she suffers from a disability, and the disability caused the behavior for which she was terminated. Matter of McEniry v. Landi, 84 N.Y.2d 554, 558 (1994); see Vig v New York Hairspray Co., L.P., 67 AD3d 140, 146 (1st Dept 2009).  "Disability" is defined, under the NYSHRL, as "a physical, mental or medical impairment which, upon the provision of reasonable accommodations, does not prevent the complainant from performing in a reasonable manner the activities involved in the a plaintiff must job or occupation sought or held." Executive Law 5 292 (21); see Phillips v City of New York, 66 AD3d 170, 178 (1st Dept 2009); Pimentel v. Citibank, N.A., 29 AD3d 141, 145 (lst Dept 2006). 'The NYCHRL, which provides greater protections than the NYSHRL (see Williams v New York City Housing. Auth., 61 AD3d 62, 66 [lst Dept 2009]), simply defines "disability" as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." Administrative Code § 8-102 (16) (a); see Phillips, 66 AD3d at 181.

It is clear from the record that Diaz suffers from a disability (See Defendants' Memorandum of Law page 1).  It is also clear from the record that her disability caused her to stop teaching.  Diaz has not brought a claim for violation of any federal statutory disability law. She has however successfully established a claim under state and city law because the record

6

supports her claim that she suffers from disability which includes severe chronic asthma and acute bronchospasm, a potentially life threatening condition triggered by strong fragrances related to perfumes and chemicals.

Pinto in her initial conversation with Diaz immediately instructed Diaz to apply for disability at a time when Pinto had no clear idea what Diaz's disability was.  See Defendants' Exhibit B page 11 lines 1- 8.  M.s Diaz who is Hispanic, was the only teacher sent for a medical examination pursuant to New York Education Law Section 2568 (See Defendants Exhibit B pages 17 line 23-25 and page 18 lines 1-18.) Diaz has been on this accommodation for eight years without any complaint from students, parents, or teachers.  See Defendants' Exhibit B page 23 line 21-25 and page 24 lines 1-7.  Pinto decided however to terminate Diaz's accommodation at the time when there was no issue or complaint from anyone.  Pinto did not disturb other non-Hispanic teachers who were granted other various accommodations.  In September 2016, Pinto insisted that Diaz should continue to teach without the benefit of the accommodation she was granted.  Diaz was the only teacher that was made to continue teaching without the benefit of her accommodation.  As a result of this compelled exposure to fragrance from the students in the fourth grade class, Pinto assigned to Diaz,  Plaintiff Diaz became violently ill and was taken to the emergency room three times.  (See Defendant Exhibit B page 41 lines 6-20.)  Diaz also provided medical notes to Pinto and the school updating the school and Pinto on Diaz's medical condition.  (See Plaintiffs Exhibit 1, 2, 5, and 6 attached to attorney's certification and Diaz's affirmation.)  It is clear from the above that Pintos' actions, were acts of invidious discrimination.

Pinto discontinued the accommodation that Diaz was granted by three previous principals for eight years without any effort to assess whether Diaz was able to teach effectively during the

period that the accommodation was granted.  Pinto did not discuss Diaz's performance

evaluation with her or the assistant principals before terminating the accommodation.  (See

Defendants Exhibit C page 14 lines 18-25 and page 15 lines 1-9, and page 16 lines 11-21 and

page 17 lines 10-22).  Additionally Pinto did not meet with Diaz to set and plan goals for the

year as required by the department before she decided to terminated a reasonable

accommodation that worked very well for eight years prior to Pinto's assumption of duty.  (See

Defendants Exhibit C page 18 lines 6- 12 page 17 lines 1- 10 and page 19 and 20).  Pinto was not

interested in engaging in an interactive process with Diaz to determine what accommodation

may be appropriate if Pinto had a good faith belief that Diaz's accommodation was violating a

DOE policy, which it was not.  For example, Pinto wrote a letter directing Diaz to appear for a

medical evaluation and in the letter Pinto stated the reason for the medical evaluation request

include a statement made by Diaz during a preliminary meeting on September 6, 2016.  (See

Defendants' Exhibit J).  When Pinto was asked at deposition what she meant by preliminary

meeting she responded by saying she doesn't know.  (See Defendants' Exhibit C page 55 and

56).  When asked at Pinto's deposition whether she was aware of the number of students

removed from a class in the last 3 years, Ms. Pinto responded that she didn't know.  (See

Defendants Exhibit C page 35 lines 1-10.)  The only rational way to explain Pinto's action is that

she engaged in discrimination against Ms. Diaz because of disability.  Diaz's accommodation

was working perfectly.  There was no complaint from anyone.  Pinto never took any steps to

investigate if there was any problems or issues with Ms. Diaz's performance as a teacher.  Pinto

simply made an irrational decision to cancel an existing accommodation and subjected Ms. Diaz

to avoidable violent illness and extended medical leave.  Pinto's action are discriminatory.

An employer's refusal to reasonably accommodate an employee's known disability also constitutes discrimination under the NYSHRL and the NYCHRL. See Executive Law § 296 (3) (a); Administrative Code 5 8-107 (15) (a); Miloscia v. B.R. Guest Holdings, LLC, 33 Misc.3d 466, 473 (Sup Ct, N.Y. County 2011), affd in part & mod in part, 94 AD3d 563 (lst Dept 2012); see generally Phillips v City of New York, 66 AD3d 170, supra. "Reasonable accommodation," under the NYSHRL, means actions which permit a disabled employee "to perform in a reasonable manner the activities involved in the job  and include, but are not limited to job restructuring and modified work schedules; provided, however, that such actions do not impose an undue hardship on the business." Executive Law § 292 (21-e); see Jacobsen v New York City Health & Hosps. Corp., 97 AD3d 428, 431 (1st Dept 2012); Pimentel, 29 AD3d at 145.

The NYCHRL defines "reasonable accommodation" as "such accommodation that can be made that shall not cause undue hardship in the conduct of the covered entity's business. The covered entity shall have the burden of proving undue hardship." Administrative Code § 8-102 (18); see also Administrative Code § 8-107 (15) (b) (employer may assert, and must prove, affirmative defense that disabled employee "could not, with reasonable accommodation, satisfy the essential requisites of the job"); Harris & Assocs. v DeLeon, 84 N.Y.2d 698, 706 n 2 (statute explicitly puts burden on employer to prove inability to make reasonable accommodation). Thus, "there are no accommodations that may be unreasonable' if they do not cause undue hardship" (Phillips, 66 AD3d at 182), and "there is no accommodation (whether it be indefinite leave time or any other need created by a disability) that is categorically excluded from the universe of reasonable accommodation." Id.; see Forgione v. City of New York, 2012 WL 4049832, *9, 2012 U.S. Dist LEXIS 130960, *26-27 (ED NY 2012).

9

The NYSHRL and the NYCHRL further require that, as a first step in providing a reasonable accommodation, an employer must "engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested. "Phillips, 66 AD3d at 176; see Jacobsen, 97 AD3d at 431-432; Miloscia, 94 AD3d at 564.

Engagement in an individualized interactive process is itself an accommodation, and, generally, the failure to so engage is a violation of the state and city statutes. See Miloscia, 94 AD3d at 564; Jochelman v. New York State Banking Dept., 83 AD3d 540 (lst Dept 2011); Phillips, 66 AD3d at 176; Pimentel, 29 AD3d at 149; Vinokur v Sovereign Bank, 701 F Supp 2d 276, 292 (ED N.Y. 2010).

Moreover, even in the absence of a specific request by an employee, an employer generally has an independent duty to investigate feasible accommodations. See Phillips, 66 AD3d at 189.  This view comports with the statutory and regulatory language, which provides, under the NYSHRL, that "the employer has a duty to move forward to consider accommodation once the need for accommodation is known or requested." 9 NYCRR 466.11 (j) (4). The NYCHRL also affirmatively requires that, even in the absence of a specific request, an employer "shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job provided that the disability is known or should have been known by the [employer]." Administrative Code § 8-107 (15) (a); see Phillips, 66 AD3d at 189.

In order to establish that an employer failed to reasonably accommodate, Plaintiff must show that she was disabled, employer had notice of disability, Plaintiff can perform the essential function of her job with reasonable accommodation, and employer refused to make reasonable accommodations (See Vinokur, 701 Supp. 2d at 293.)  Plaintiff meets all four elements and the

employer should have continued her accommodation. Diaz was disabled, Pinto, her employer had notice of her disability, and Diaz was able to perform all functions of her job for eight years with her reasonable accommodation.  The reasonable accommodation the Plaintiff was granted allowed her and other 5th grade teachers to send a letter home to the parents. (See Defendants' Exhibit D.)  Under the terms of the accommodation, if students wearing a fragrance triggered Diaz's allergies, the student will be informed that they would be assigned to another classroom for the day.  The student's parents would also be called an informed, the principal would be informed and arrangements would be made to transfer the student to another class for the day. (See Defendants' Exhibit B page 83 line 21-25 and page 34 line 1-11.)   All the fifth grade teachers used the same textbooks and curriculum.  See Defendants' Exhibit B age 35 lines 10-17.)  Diaz did not experience symptoms of her severe allergy for three years until her accommodation was taken away in September 2016.  (See Defendants' Exhibit B page 37 line 23-25 page 38 line 1-10.)   Diaz satisfactorily performed her job with reasonable recommendation and was awarded a satisfactory evaluation in each of the eight years she performed her job with reasonable accommodation.  (See Defendants' Exhibit B page 43 line 20-25 page 44. See Diaz's affirmation.)  Pinto based her decision to terminate Diaz's reasonable accommodation, on her interpretation of the discipline code.  (See Defendants' Exhibit C page 23 lines 25 page 29 lines 1 and page 35 lines 1-16.)  The discipline code however is inapplicable in this particular situation because the student has not committed any misconduct and no violation is alleged.  (See Defendants' Exhibit C page 25 lines 14-25.)  The discipline code established the protocol for removing a student form school based on safety and misconduct. (See Defendants' Exhibit C pages 26 –28, page 29 lines 17-23.)  The reliance by Pinto on the discipline code is misplaced because no act of discipline is involved in Diaz's accommodation

11

request.  Removing a student in order to preserve the safety of a teacher and assigning the student to an equivalent classroom for the day does not constitute a disciplinary action.  It also does not deprive the student of an education.  Pinto either did not familiarize herself with DOE policy or she made a conscious decision to ignore them.  When Pinto was asked in her Deposition if she would grant reasonable accommodation she responded by saying it was not her accommodation to give.  (See Defendants' Exhibit C page 35 lines 1-10.)  Pinto was obviously not familiar with DOE accommodation request policy which mandates employees to speak to their supervisor with a goal to informally arrange an accommodation where practicable.  (See Defendants'' Exhibit H.).  Pinto claimed in her deposition that she could accommodate all the request in the letter sent to parents, (See Defendants' Exhibit D.), with the exception of removing a student from a classroom.  (See Defendants'' Exhibit C page 36 line 22-25 page 37 line 1-7.)  This is not true because Pinto indicated to Diaz that she would not approve any correspondence that requires people not to wear fragrance.  (See Plaintiffs Exhibit 4 attached to Attorney' Certification.)  The Defendants are aware that Plaintiff submitted her doctor's notes to the Administrative Office at P.S. 20 as well as the Central Department of Education Human Resources Department. See Diaz's affirmation This documentation properly referenced the status of Diaz's health and included request from the doctors to continue reasonable accommodations. (See Plaintiff's Exhibits 1, 2, 5, and 6.)  The reliance by Pinto on the discipline code is utterly misplaced, unpersuasive and a pretext for discrimination.  The Defendant argued in their moving papers that Diaz saw a physician at the medical evaluation and the physician found her not fit for work.  The examination was conducted on November 2016 several months after she forced to be exposed to fragrance in the classroom.  The doctor's note at the examination on November 1, 2016 noted that Diaz's reasonable accommodation request was under review and the

examination confirmed Plaintiffs diagnosis and noted in two separate pages her accommodation was under review.  (See Defendants' Exhibit K page 823 and page 825.)  Interestingly on November 2 2016, the same doctor wrote another note indicating that Diaz had an informal accommodation arrangement with former principals.  (See Defendants' Exhibit L page 788.) Also on November 2nd someone sent an unsigned letter addressed to Diaz checking a box indicating that Diaz's accommodation request has been denied because it was not medically warranted.  The letter was not signed by a doctor and did not give any reason for denial.  The letter did not provide an explanation of what was reviewed or why Ms. Diaz's accommodation was not medically warranted.  (See Defendants' Exhibit M.)   The denial letter had a box for "administrative rejection based on inability to perform essential functions of the job or undue hardship on the DOE".  That box was not checked.  (See Defendant's' Exhibit M.)  Although the DOE doctor confirmed Plaintiffs diagnosis, the department issued an inconsistent and irrational letter that was unsigned and provided no reason as to why the writer of the unsigned letter believed that Diaz's condition is medically unwarranted for reasonable accommodation.  It is obvious from the foregoing argument that the defendant violated Plaintiffs rights when Diaz was denied reasonable accommodation.  The Defendant also engaged in acts of discrimination against the Plaintiff due to her disability.

In Ruhling v. Tribune Co, the court noted as follows *"Implicit in the statutes is the requirement that the accommodation enable the employee to continue to enjoy or perform the terms, conditions or privileges of employment." Ruhling v Tribune Co., 2007 WL 28283, \*15 n 4, 2007 U.S. Dist LEXIS 116, \*46 n 4 (ED N.Y. 2007). Defendants' termination of plaintiff's employment, by definition, ended her ability to engage in an interactive process or otherwise to continue to enjoy or perform the terms, conditions and privileges of employment. See Miloscia,*

*33 Misc.3d at 478. Therefore, defendants 'suggestion to plaintiff, after she was fired, that she*

*contact them when she was able to return to work, failed to comply with the requirement to*

*engage in an interactive process and to consider whether a reasonable accommodation could be*

*provided.* Although Plaintiff in this case was not terminated the denial of reasonable

accommodation ended her ability to continue the interactive process as well.


### POINT II
### RACE DISCRIMINATION IS WELL PLEADED IN THE AMENDED COMPLAINT
### AND MUST SURVIVE DEFENDANTS' SUMMARY JUDGMENT.

Plaintiff has established more than a prima facie case to support her claim of race

discrimination and a discriminatory disability administration policy managed by her school

principal that disadvantaged her as a Hispanic employee. To state a claim against a municipality

or an official in his official capacity under § 1983, a plaintiff must allege that there was: (1) an

official policy, custom, or practice; (2) the policy, custom, or practice inflicted the injury

suffered by the plaintiff; and (3) the injuries constitute a violation of plaintiff's constitutional

rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–694 (1978); *Bowen*

*v. Cnty. of Westchester*, 706 F.Supp.2d 475, 484 (S.D.N.Y.2010); *Burgis v. Dep't of Sanitation*

*City of New York*, 2014 U.S. Dist. LEXIS 44759 (S.D.N.Y. 2014).

42 U.S.C. § 1981 states: "All persons within the jurisdiction of the United States shall

have the same right in every State and Territory to make and enforce contracts, to sue, be parties,

give evidence, and to the full and equal benefit of all laws and proceedings for the security of

persons and property as is enjoyed by white citizens, and shall be subject to like punishment,

pains, penalties, taxes, licenses, and exactions of every kind, and to no other." To state a claim

under Section 1981, a plaintiff must allege that (1) plaintiff is a member of a racial minority; (2)

14

defendant intended to discriminate on the basis of race; and (3) the discrimination concerned the rights to "make and enforce contracts, to sue, be parties, give evidence, and the full and equal benefits of all laws and equal benefit of all laws and proceedings for the security of persons and property." *Keitt v. New York City*, 882 F.Supp.2d 412, 423 (S.D.N.Y.2011); *Burgis v. Dep't of Sanitation City of New York*, 2014 U.S. Dist. LEXIS 44759 (S.D.N.Y. 2014).

Plaintiff meets the elements in Section 1981 as stated above. Plaintiff is a racial minority. Defendant Pinto, the school principal, clearly intended to discriminate on the basis of race and the discrimination with reference to failure to grant reasonable accommodation and the abrogation of an existing reasonable accommodation are connected to enforcement of contracts and right to sue including the full and equal benefits of law.

Under *Monell* and its progeny, a municipality may not be held liable under § 1983 on a theory of respondeat superior. *Guerrero v. City of New York*, No. 12 Civ. 2916(RWS), 2013 WL 673872, at 2 (S.D.N.Y. Feb. 25, 2013). Accordingly, "the plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries....Second, the plaintiff must establish a casual connection—an affirmative link—between the policy and deprivation of his constitutional rights." *Id*. Merely asserting that a municipality has such a custom or policy is "insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Id*.; *Za hra v. Town of Southold*, 48 F.2d 674, 685 (2d Cir.1995); *Brodeur v. City of New York*, No. 99 Civ. 651(WHP), 2002 WL 424688, at 6 (S.D.N.Y. Mar. 18, 2002).

In order to establish municipal liability, "a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir.1991); *Pembaur v. City of Cincinnati*, 475 U.S. 469,

478–81, 106 S.Ct. 1292, 1297–99, 89 L.Ed.2d 452 (1986). Although this rule "does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti*, 941 F.2d at 123. "The inference that a policy existed may, however, be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges" that its agents were violating citizens' constitutional rights. *Id*.

In cases claiming selective treatment based on membership in a protected class, Plaintiff must demonstrate that they were treated differently from similarly situated individuals who were not in the protected class. *Vassallo*, 591 F.Supp.2d at 184; see also Walker, 2010 WL 5186779, at *7 ("Individuals are 'similarly situated' when their circumstances are alike in all material respects." (citing Shumway v. United Parcel Serv., Inc., 118 F.3d 60 (2d Cir.1997))); *Abel*, 2009 WL 321007, at *4 (explaining that to establish different treatment from similarly situated individuals, plaintiffs must show that (1) the persons to whom they compare themselves are similarly situated in all material respects and (2) the defendants knew there were similarly situated individuals and consciously applied a different standard to plaintiffs). "Similarly situated does not mean identical, but rather a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, to the extent that an objectively identifiable basis for comparability exists." *Walker*, 2010 WL 5186779, at *7.

Plaintiff was subject to discrimination because Pinto did not request that any non-Hispanic teachers seeking accommodations undergo a medical evaluation in order to continue

their reasonable accommodation.  Plaintiff identified Mara Lane, a non-Hispanic teacher, as
someone Pinto gave preferential treatment. (See Defendants Memorandum of law page 8.)  Lane
had issues with her legs and was granted an accommodation that she did not have to escort
students.  Ms. Lane was not asked to attend a medical evaluation although Defendant claimed
that Lane was denied reasonable accommodation, this is not true because Lane continued to
enjoy the accommodation of not escorting the students when Plaintiff was in school after Pinto
became principal.  Ms. Lane is a White female employee and was similarly situated as the
Plaintiff because she was a licensed teacher as the plaintiff is, both had reasons to request
accommodation prior to the arrival of Ms. Pinto.  Ms. Lane continued her accommodation while
Ms. Diaz was in school in September and Ms. Lane was not instructed to undergo medical
review.  The defendant has never disputed the contention that Ms. Lane was not sent for a
medical review. Plaintiff also identified Patrick Connolly as a non-Hispanic teacher who was
treated differently.  Mr. Connolly, like Ms. Lane was not asked to undergo a medical review.
Mr. Connolly was also never told to leave his job and apply for disability.  Ms. Diaz however
was told to stop working and to seek disability prior to Pinto becoming aware of the extent off
her disability.  Contrary to the argument by the Defendants, Diaz does not need to be aware of
the extent or specific nature of Mr. Connolly's condition in order to establish a case of race
discrimination.  Diaz is a member of a protected class who was treated differently and who was
forced to leave her job when she was denied reasonable accommodation and subsequently lost
her source of income.  Diaz is able to show that Pinto established a different method of dealing
with medical request for accommodation by a Hispanic employee and non Hispanic employees.
Also, contrary to Defendants argument to be similarly situated, the compatriots do not have to be
identical they only need to be similar in material respects.  Identity of illness or medical

condition would be unreasonable.  The Defendants have not denied the facts that Mr. Connolly requested leave and it was granted.  The Defendants have not denied that Pinto did not tell Connolly to quit his job and apply for disability.  Diaz in fact has a more substantive reason for her accommodation because her illness is life threatening and can flare up at any moment.  Diaz also identifies Isabelle Reyna-Torres as another employee who was not required to undergo medical examination.  Defendant attempted to destroy Plaintiffs argument with respect to insinuating that Ms. Reyna Torres is Hispanic.  However Defendants have no proof that she is Hispanic.  (See Defendants Exhibit C page 7).  Plaintiff also identifies Ms. Lisa Bradford as a non-Hispanic teacher that Pinto treated differently because she was allowed to breast pump in a private place during school time.  The Defendant countered this argument by responding that they are required by law and DOE policy to provide Ms. Bradford with this request.  Plaintiff does not dispute the fact that the law requires that Ms. Bradford be accommodated, but what plaintiff contends is that where DOE policy and the law mandates an accommodation for her she is denied the accommodation that is so mandated and was approved by previous principals.

When Pinto became principal she established a school wide policy through which she treated Plaintiff differently from teachers who are of different racial extractions.  By doing so Pinto established a conscious policy of preferential treatment for non-Hispanic teachers.  With the establishment of this policy Plaintiff was denied her rights to enforce he employment contract in violation 42 U.S.C. § 1981.


**POINT III**
**PLAINTIFF WAS DENIED HER DUE PROCESS RIGHTS UNDER THE UNITED STATES CONSTITUTION AND UNDER THE NEW YORK STATE CONSTITUTION**

To sustain a §1983 claim based on an alleged violation of due process, a plaintiff must show that (1) he possessed a liberty or property interest protected by the Constitution or federal statutes and (2) he was deprived of that liberty or property interest without due process. *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir.2002); Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995).  In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), however, the Supreme Court stated that a property interest is "defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*. at 577, 92 S.Ct. 2701.

Plaintiff has been subjected to discrimination because of he disability and Plaintiff has been improperly denied reasonable accommodation that was approved for her in violation New York City Human Rights Law and New York State Human Rights Law.  To justify their action after the fact, Plaintiff was referred to a medical examination that concluded that her reasonable accommodation is not medically warranted.  No explanation what so ever was provided for this conclusion.  As described above Plaintiff was also subject to discrimination because of her race. She was treated differently because of her Hispanic origin, when the Defendants' subjected her to unnecessary exposure to fragrance in the classroom and chose to send her for medical examination when no one else requesting accommodation was sent for such examination.  These actions together constitute violations of Plaintiffs due process rights under the New York State Constitution and United States Constitution.

## CONCLUSION

The Defendants have failed to articulate any reason why this Court should grant their motion for summary judgment. The court should deny the summary judgment motion

November 27, 2017

Respectfully submitted,

Albert Van-Lare
The Law Offices of Albert Van-Lare
125 Maiden Lane, Suite 510
New York, NY 10038
(212) 608-1400

## CERTIFICATE OF SERVICE AND ECF CERTIFICATION

I hereby certify that I have served an ECF copy of the Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment on November 27, 2017, to:

Matthew J. Connahan
Assistant Corporation Counsel
of the City of New York
Attorney for Defendants
100 Church Street, Room 2-193
New York, New York 10007
(212) 356-4078
mconnaha@law.nyc.gov

The Law Offices of Albert Van-Lare
Attorneys for Plaintiff

_____
Albert Van-Lare
125 Maiden Lane, Suite 510
New York, New York 10038
vanlareesq@aol.com

21